47 CCPA

**Application of Ahmed PANAGROSSI and Ray L. Hauser.**

**Patent Appeal No. 6542.**

United States Court of Customs and Patent Appeals.

April 6, 1960.

James M. Mason, Rockwell & Bartholow, Edmond M. Bartholow, New Haven, Conn., for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

and Judge WILLIAM H. KIRK-PATRICK.[1]

RICH, Judge, delivered the opinion of court:

RICH, Judge.

Appellants filed an application to reissue their Patent No. 2,705,691 on March 22, 1957, Ser. No. 647,931. The patent is not included in the record but it is understood that the application on appeal contains a specification identical with that of the patent. Numerous claims have been allowed, additional to the claims of the patent, and this appeal is from the refusal to allow three claims which read as follows:

"5. A fluorine-substituted polyethylene body having fused to one of its surfaces a priming composition containing rubber.

"6. A fluorine-substituted polyethylene body having fused to one of its surfaces a priming composition containing butyl rubber.

"19. The method of rendering bondable the surface of a fluorine-substituted polyethylene, which comprises applying to the surface of the fluorine-substituted polyethylene a priming composition containing rubber and fusing said priming composition to the surface of the fluorine-substituted polyethylene."

"Fluorine-substituted polyethylene" is a generic term used by appellants to include certain materials also referred to as "fluorocarbon plastics." The only materials of this class specifically disclosed are polytetrafluoroethylene, known by the trademark "Teflon," and polytrifluorochloroethylene, known by the trademark "Kel-F." For the sake of clarity we shall talk about Teflon, it being understood that what we say applies equally to Kel-F which is a material of very similar characteristics presenting similar problems and having similar advantages.

Teflon, as appellants disclose, is a material which, when formed into solid bodies, has extraordinary toughness and resistance to heat, cold, erosion, abrasion, solvents weathering, and chemical attack. It is also highly resistant to wetting by water, solvents, cements, and adhesives of every known kind in consequence of which it is difficult to get anything to stick to it or to stick it to anything else. Appellants addressed themselves to the problem of bonding Teflon to other things, such as rubber, so as to make laminates for various practical uses. Their own general statement of their invention in the specification is as follows:

"As will appear from the following description, the new method of bonding these plastics to other substances such as rubber comprises the step of applying to the surface of the plastic as *a priming coating* a coating or layer *which is a composite of the plastic and particles of uncured rubber,* then giving the coating a heat treatment which cures the rubber therein and fuses *the composite* to the * * * plastic in a manner to provide a strongly adherent layer having the necessary adhesive properties, after which uncured rubber is applied to the adhesive layer, and the uncured rubber cured or vulcanized." [Emphasis ours.]

It will be observed that adhesion to Teflon is secured by means of a priming coating fused to the Teflon and containing *two* ingredients, first, Teflon itself and second, particles of uncured rubber. The specification contains four specific examples of the production of such priming coatings.

Example 1 teaches coating a Teflon body *first* with a 50% dispersion of Teflon particles in water and *then* with a solution of 14.5% "butyl" rubber in benzene. The Teflon dispersion was

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

first brushed on and apparently dried at room temperature, though the specification does not say so. The implication is that the Teflon dispersion was dried as it is said that after the rubber solution was brushed on over it the sheets were "*again* dried at room temperature." (Our emphasis.) The thus doubly coated body was then put in an oven for three minutes to "cure the rubber particles and fuse the composite layer to the surface of the plastic."

In example 2 a single *mixed* coating was used consisting of equal parts of 50% Teflon dispersion in water and 50% dispersion of butyl rubber cement in toluene, the mixture being thinned to brushing consistency with more toluene. Teflon film coated with this primer was fused in an oven. The rubber cement was about two-thirds rubber and one-third carbon black with small additions of certain vulcanization agents not important here.

Example 3 is a Kel-F example and the priming coating was again a *mixture*, this time of equal parts of a 50% solution of butyl rubber in toluene and a 50% dispersion of Kel-F in xylene, brushed on a film of Kel-F and fused.

Example 4 used the same dispersion of Kel-F in xylene but coated it on separately *first*, dried it at room temperature and *then* coated on, by spraying, a 50% solution of butyl rubber in benzene.

The priming coating is referred to in Example 1 as "The composite layer containing particles of the two substances," in Example 2 as the "composite adhesive layer," in Example 3 as the "composite coating" and in Example 4 as "The composite layer containing particles of the two substances." Nowhere in the specification is there any further amplification, modification or variation of these teachings that the priming composition is a composite of the plastic polymer and rubber.

The one remaining ground of rejection which is the sole issue on this appeal has become somewhat confused as it has as- cended to this court. It was first raised in the Examiner's Answer on the appeal to the board. The final rejection was based solely on a prior art patent and the board reversed it so that it is not before us. The examiner repeated it in his Answer but in addition he said the following:

> "* * * claims 5, 6, and 19 * * * omit the fluorine-substituted polyethylene, disclosed in the specification as an essential ingredient in the bonding layer. There is no disclosure in the original specification that this component can be omitted from the composition of the coating."

He said further:

> "It is noted that in the disclosure herein the step of heating is applied to the coating *mixture* of the fluorine-substituted polyethylene and rubber *which is not claimed* in the rejected claims. On the top of page 4 of applicants' specification it is disclosed that the coating is heated
>
> " 'to cure the rubber and fuse the composite layer to the surface of the plastic[.]'
>
> "There is no indication that fusing is necessary when such a coating merely contains rubber and does not necessarily contain the fluorine-substituted polyethylene plastic.
>
> * * * * * *
>
> "* * * it is disclosed in the specification (1) that the priming coating includes a *mixture* of fluorine substituted polyethylene and rubber (not recited in the rejected claims) * * *."

On the basis of one or another of these remarks appellants jumped to the conclusion that the examiner, as they stated in their brief in reply to his Answer, had introduced the new ground of rejection that claims 5, 6, and 19 were directed to a *different invention* from the allowed claims because they do not specify a priming composition which is a *mixture* of rubber and plastic particles. We are

unable to see that the examiner made any such rejection but, be that as it may, appellants' argument led the board into assuming that the claims on appeal were rejected as for an invention different from that disclosed in the original patent and this supposed rejection—which we think never was made—the board affirmed.

The confusion in the board understandably led the Patent Officer Solicitor to say in his brief that the sole issue here is whether the appealed claims "are for the same invention or a different invention than that of the original patent." Argument is then presented predicated on reissue law including 35 U.S.C. 251 and various cases dealing with the rule that in reissuing a patent the reissue claims must be for the same invention as that of the original patent.

We deem reissue law to have no bearing on the present issue. The solicitor for the Patent Office at the oral argument appeared to be of the same opinion. (Appellants submitted on brief and did not appear.) What this court has before it for review is the rejection made by the Patent Office. The board did not itself intend to raise any new ground of rejection but affirmed a rejection it presumed to have been made by the examiner. We, therefore, shall look to what the examiner stated, as quoted above. Clearly his objection was that the appealed claims do not define an invention which is described in the specification. Clearly the board was cognizant of the examiner's position, as it said:

"After consideration of the specification we are constrained to agree with the examiner that the fluorine-substituted polyethylene is an essential ingredient of the priming composition and that *there is no disclosure that this component may be omitted therefrom.* The portion * * * we have above quoted, clearly indicates that the problem * * * was solved by applying 'as a priming coating a

coating or layer which is a *composite* of the plastic and particles of uncured rubber, then giving the coating layer a heat treatment which cures the rubber therein and fuses the *composite* to the fluorine-substituted polyethylene plastic * * * after which uncured rubber is applied to the adhesive layer * * *.' *There is no indication that rubber alone could be fused to the plastic base."* [Emphasis ours.]

This is also a clear indication of the reason the board affirmed the rejection of the claims. An applicant cannot describe one invention and claim another.

Appellants are frankly contending that on the basis of their disclosure they are entitled to claims "broad enough to contemplate rubber priming compositions both with and without particles of the fluorinated polyethylene base material." They so contended before the examiner and the board and failed to persuade them. They must fail here also. None of the arguments on which they seek to support this contention is valid.

Appellants' first point is that their Example 4 discloses "that a solution containing rubber alone may be applied to a *dry fluorinated polyethylene film* followed by fusion * * *." The assertion is not explained and is contrary to fact. When the rubber was coated on the film the film may have been "dry" but it had first been coated with "A 50% dispersion of 'Kel-F' particles in xylene" as a necessary part of the priming composition. Appellants' contention oversteps the boundary of proper argument in attempting to obscure the presence, as a part of the primer, of the Kel-F coating on the "film."

Appellants' second point is that claim 1 of the patent discloses the concept of using a solution of rubber alone. Claim 1, repeated in the present reissue application, reads:

"1. A *laminate of* fluorine-substituted polyethylene *plastic and* a cured *rubber* compound containing rubber selected from the group con-

sisting of isobutylene-isoprene and isobutylene-butadiene, both members of the *laminate* being thin films." [Emphasis ours.]

This claim is directed to a laminate of two layers which cohere, presumably, by virtue of the "priming composition" referred to in the claims on appeal and under discussion here. Claim 1 makes no reference, however, to the priming composition or to any part of it. The "rubber compound" of claim 1 is a lamina, not a priming coating. Furthermore, it would appear that this contention was not made before the examiner or the board, in which case it is improperly raised here. In re Herthel, 174 F.2d 935, 36 CCPA 1095, 82 USPQ 55.

Appellants' third point is "that the claims on appeal do not call for a priming composition containing rubber *alone*, but specify * * * a priming composition *containing rubber* (claim 5)." Too true! That is their defect. They read on the use as a primer for Teflon of any composition containing rubber and hence are not supported by the specification. They would read on rubber cement alone or a solution or dispersion of rubber alone in a solvent or liquid vehicle, yet an *essential* feature of the *disclosed* invention is the inclusion in the primer of a Teflon dispersion. Having taught this in the general statement of the invention and in all four examples, appellants' argument asks us to believe that Examples 1 and 4 disclose that "a coating solution containing rubber alone is applied to the base film." In example 1 the "base film" at the time of application of the rubber was already coated with a 50% Teflon dispersion and in Example 4 it was coated with a 50% Kel-F dispersion. These dispersions were "brushed onto" the base film. They cannot now be brushed off so easily.

Finally, appellants make the argument, if it can thus be dignified, that the appealed claims "read on" the disclosure. So would a claim reading simply, "Primed Teflon." That is not persuasive of the contention that the claims are allowable.

The rejection of claims 5, 6, and 19 as not supported by the disclosure is affirmed. It is immaterial whether one looks to the disclosure of the instant application or of the original patent for they are the same. There is no disclosure that Teflon can be successfully "primed" merely by fusing on its surface a composition containing rubber.

Affirmed.