49 CCPA

**Application of Eli SIMON, Frank W. Thomas and Welton R. Burney, Jr.**

**Patent Appeal No. 6763.**

United States Court of Customs and Patent Appeals.

May 18, 1962.

Stevens, Davis, Miller & Mosher and Ellsworth H. Mosher, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 19 and 20 of an application for reissue of Patent No. 2,772,245, issued November 27, 1956, for "Resilient Cellular Resin Products." The present application, Ser. No. 758,631, was filed September 2, 1958. Except for the two new claims above mentioned, the specification and claims are admittedly identical with those of the patent.

Claims 19 and 20 are admittedly broader than any claim of the patent. No question has been raised, however, as to appellants having made a timely application for a broadened reissue patent. On this the Patent Office brief is explicit, saying: "The dates make it evident that appellants satisfy 35 U.S.C. 251, last paragraph."

In view of the nature of the issue which controls our decision, it is unnecessary to consider the somewhat complex chemistry involved in the case. Suffice it to say that the patent discloses that expanded or cellular resin or plastic products were known, including some previously patented by appellants and made by reacting a diisocyanate, an alkyd resin, and a catalyst. These are stated to have been undesirably rigid and often rather brittle and it appears to have been a principal object of the present invention to produce such a cellular resin which is resilient and flexible, varying from semi-hard to soft and rubbery materials.

The invention is broadly disclosed in what the Patent Office brief calls the following "critical passage" of the patent specification (bracketed letters added by us):

"The principal or basic components of the present formulations for preparing the expanded or cellular plastic materials or products are [A] castor oil; [D] polyhydric alcohol, mono and diesters of fatty acids containing from 1 to 3 free OH groups per molecule; [B] a diisocyanate; [E] a catalyst and [C] water."

The bracketed letters utilized above are not in alphabetical order because we have used those corresponding with appellants' brief wherein it is stated:

"* * * one may * * * regard appellants' eighteen allowed claims as directed to a cellular material resulting from the *combination* of ingredients A + B + C + D + E whereas the two claims here on appeal are in terms of a * * * *subcombination* of ingredients A + B +

C, where these letters may be regarded as having the following significance:

"A = castor oil

"B = meta-toluene diisocyanate

"C = water

"D = glyceryl mono- and/or di-fatty acid esters

"E = alkali metal mono- and/or di-substituted salts of certain acids and the like, e. g., as defined in allowed claim 2 [which contains, in defining this component, a Markush group commencing with the words 'the catalyst being selected from the group consisting of,' and then names 7 compounds or classes of compounds].

\*    \*    \*    \*    \*    \*

"It is not an oversimplification of the case, then, to say that the allowed claims 1 to 18 are directed, in essence, to the *combination* A + B + C + D + E, while the two claims here on appeal are *broader* claims directed in terms to the *subcombination* A+B+C."

To state the whole of appellants' case, one has but to add that they rely, as the principal legal authority for the right to make claims to A + B + C, on the decision of the United States Supreme Court in Special Equipment Co. v. Coe, 324 U. S. 370, 65 S.Ct. 741, 89 L.Ed. 1006, which we shall consider later.

Claim 20, the broader of the two claims on appeal as to amounts, reads:

"20. A cellular material which is the product of reaction of a foaming composition comprising on a percentage by weight basis, 10 to 75% castor oil, 0.1 to 5% water and the remainder meta-toluene diisocyanate."

Referring to that portion of the brief above quoted, it can be seen that this is a claim to A + B + C with quantity limitations (which are unimportant here) and that, compared to the patented claims, D and E have been omitted, the latter being referred to by appellants as the "catalyst system," at least for purposes of argument.

The Patent Office position, reduced to its essence and disregarding its various modes of expression, is that appellants' original specification contains no disclosure of the invention A + B + C, the subject matter of claims 19 and 20, for which reason appellants cannot have a patent containing claims to such an invention.

The examiner unequivocally stated his position as being that there is "no basis in the specification" of the original Simon et al. patent to justify claims 19 and 20, giving as his reasons: (a) that the principal or basic components of the invention include all five of those mentioned in the above-quoted "critical passage"; (b) that in an amendment of July 8, 1954, applicants stated that the catalyst is characteristic of their invention; and (c) that the appealed claims contain "new matter in the omission of the polyhydric alcohol esters and catalyst." For this last proposition he cited 1401.07 M.P.E.P. (2d ed.) which reads:

"New matter, that is, matter not present in the patent, is excluded from a reissue application with even greater strictness than in an ordinary case. The claims in the reissue case must also be for matter which the applicant had the right to claim in the original patent. New matter may exist by virtue of the omission of a feature or of a step in a method. See United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp., 1942 C.D. 751; 538 O.G. 741."

The Board of Appeals fully agreed with the examiner and with the answers which he gave in his answer to the arguments of the appellants and said,

" \* \* \* there is only one real issue submitted for decision here, viz., whether appellants' original application taught the invention now claimed in claims 19 and 20. That

is, would a worker of ordinary skill in this art derive from that disclosure a teaching that its cellular product could be produced omitting the catalyst and the glyceryl mono- or diester from its composition. No questions peculiar to the fact that this is a reissue application appear to be presented; rather, the issue is the same as if these claims had been presented by amendment during the prosecution of the original application. In re Panagrossi et al., 756 OG 8(10). [[277 F.2d 181,] 47 CCPA 904, 125 USPQ 410]"

We fully agree that this is a correct view of the issue. Appellants, however, assign as error the framing of the above question and the answering of it in the negative, saying, "the real issue is whether claims 19 and 20 read on appellants' original application and hence are adequately supported thereby." The board's statement that the application must *teach* the claimed invention before the applicants are entitled to a patent on it is but another way of saying the application must "adequately support" the claims.[1]

Appellants present an argument to us which appears to be the same as one made before the examiner and which we think he adequately answered. They say in their brief that "the veriest tyro in chemistry" would understand "that of course one could omit applicants' catalyst and catalyst carrier (* * * referred to above for brevity and convenience as the catalyst system, i. e., ingredients D + E) if one were prepared to ignore the necessities of a *practicable* commercial operation and be satisfied with a prohibitively slow—not inoperative, be it noted—foam-forming reaction." This argument appears to be based on a theory that the materials which appellants list in their specification as catalysts conform to an assumed definition of a cat-

alyst as a material which does not enter into a reaction and merely affects its *rate,* so that the reaction may be assumed to proceed without it, albeit at a slower rate. But the argument also makes a further assumption, that what appellants choose to call their "catalyst carrier" does not enter into the reaction either. The examiner answered a parallel argument as follows:

"Many of the disclosed catalysts of Simon et al. would enter into the reaction since they contain free -OH groups which react with the isocyanate groups of the meta-toluene diisocyanate. Catalysts of this type would be potassium ricinoleate (see examples 1 to 3 for example) or alkali metal hydroxides (column 4, lines 70–75 and examples 32 to 35 for example). The same is true for the polyhydric alcohol esters since they contain from 1 to 3 free hydroxyl groups (column 2, line 20)."

We have not found any refutation of these specific statements, which directly contradict appellants' arguments. The board said,

"We do not see that appellants have established that the omitted ingredients [D + E] here take no part in the reaction * * *."

The only semblance of a refutation we have been able to find in the brief is a reference to two paragraphs of the specification which are said to imply that the catalyst system components could be omitted. They are merely cited to us. We are not told how to find the implication. On the contrary, we have found no less than four specific statements in the specification that the catalyst "carrier" (ingredient D, omitted from claims 19 and 20) may be *"prereacted"* with the isocyanate. It would not seem to be an ingredient which a tyro would know took no part in the reaction and so might be

<hr>

1. Appellants have possibly misconstrued what the board said since they say in their brief: "It seems clear, then, that the Board fell into reversible error in taking in effect the position (R. 40) that ap-

pellants' claims 19 and 20 must *teach* the invention precisely as claimed [disclosed?]." We do not find that the board took any such position.

omitted without changing the resultant product.

On the whole record, we cannot accept the argument predicated on the nature of ingredients D and E.

Appellants' major argument in the brief in this court is that Special Equipment Co. v. Coe, supra, governs, is "the key to the entire problem of patentability presented by the present appeal," and established a settled general principle that an applicant is entitled to *subcombination* claims as well as claims to the overall *combination* of which that subcombination is a part. We shall examine the case but before doing so we remark that appellants are, in presenting this argument, making an assumption that claims 19 and 20 are for a "subcombination" (A + B + C) of the combination (A + B + C + D + E) which they disclosed in their patent specification.

In the Special Equipment case the complete combination was a machine "for automatically performing the successive operations of bobbing (cutting off the stems), splitting, paring, and coring pears, in preparation for canning or other processing." The subcombination with which the court was concerned was "the apparatus which we have described but without the splitting knife. In the operation of the device thus claimed [the subcombination] the pears are pre-split by hand." Thus it was an operative mechanism capable of doing all of the above-mentioned operations on the pears except the splitting. We need not consider the reasons for the rejection of the subcombination claims in the lower courts or its reversal by the Supreme Court. It is enough to note that the opinion proceeded on the assumption, as stated by the court, that "petitioner *has two inventions,* both of which are useful and one of which includes the other in its entirety." [Emphasis added.] There was no question in the case of a sufficient disclosure of *both* of those inventions. The subcombination claims were assumed to be supported by the disclosure. Thus there was no issue corresponding to the "one real issue" in the present case. In our judgment, the Special Equipment case has no bearing on the question before us. The most it stands for is the proposition that *if appellants had disclosed* in their specification that their ingredients A + B + C would, by themselves, and in the absence of D + E, react to produce a useful cellular resin product, which they did not disclose, it *would have been* proper to issue a patent on A + B + C. In any event, there is little, if any, resemblance between five reacting chemical compounds which form a new compound and the mechanical elements of a machine.

There is but one further point made by appellants which seems to deserve mention. They argue that our decision in Loukomsky v. Gerlich, 264 F.2d 907, 46 CCPA 805, supports their right to any claim which reads on any combination of the five basic components reacted to form their composition. The board correctly distinguished that case by pointing out that in that interference the question was not whether Loukomsky was entitled to a patent containing the claim in question but whether he could make the count for the purpose of contesting priority with Gerlich. We held, citing Den Beste v. Martin, 252 F.2d 302, 45 CCPA 798, that if the count was broad enough to embrace coating compositions disclosed by Loukomsky, "so far as the issue of priority is concerned, that is sufficient to entitle him to make the count." We said further, speaking of the *patentability* of the count to Loukomsky, which would correspond to the issue here before us, "That question may very well have to be decided after the interference is over * * *."

Our decision here, as was the case in In re Panagrossi et al., 277 F.2d 181, 47 CCPA 904, rests on our finding, in agreement with the tribunals below, that the invention of the claims on appeal is not described in appellants' specification. For this reason these claims are not patentable to appellants. In view of this decision it is unnecessary to give any consideration to the patent to Detrick

et al., No. 2,787,601, cited as a reference by the Patent Office.

The decision of the board ·is affirmed.

Affirmed.

MARTIN, Judge, sat but did not participate because of illness.