50 CCPA
**Application of Henry P. WOHNSIEDLER and Clayton J. Ammondson.**

**Patent Appeal No. 6905.**

United States Court of Customs and Patent Appeals.

April 25, 1963.

James Thomas Dunn, Stamford, Conn. (William P. Spielman, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals which affirmed the

examiner's rejection of eleven claims [1] of appellants' application [2] entitled "Resinous Composition and Process of Preparation." Fifteen claims have been allowed.

The invention relates to the preparation of polymerizable oxirane triazine compounds, and to polymerized products thereof. According to appellants' specification, the polymerizable reaction product, which contains an oxirane ring and a triazine ring, is obtained by reacting, in the presence of a halogen acceptor, a monohalohydrin of a saturated aliphatic trihydric alcohol with a halotriazine.

The above product is said to be useful, for example, in the preparation of laminates, molded objects and coatings.

Claims 4, 25, and 28 are illustrative.

"4. A polymerizable composition which comprises the dehydrohalogenated polymerizable reaction product of (A) a monohalohydrin of a saturated aliphatic trihydric alcohol wherein said alcohol contains from 3 to 10 carbon atoms and wherein the halogen is selected from the group consisting of chlorine, bromine and iodine with a compound (B) represented by the general formula

$$Y_{3-n} \left[ \text{triazine ring} \right] X_n$$

wherein X represents a halogen, Y represents a member selected from the group consisting of (a) a member selected from the class consisting of hydrogen and alkyl, alkenyl, aryl, alkaryl and aralkyl radicals, (b) amine radicals represented by the formula—NRR′ where R and R′ each represents a member having the same meaning as (a), and (c)

radicals represented by the formula —OR″ and R″ represents a member selected from the class consisting of alkyl, alkenyl, aryl, alkaryl and aralkyl radicals, and n represents an integer which is at least 1 and not more than 3.

"25. A process for the production of an ester of cyanuric acid which comprises mixing about 3 mols of an epoxyalkanol wherein the epoxy is an oxirane group with a mol of cyanuric chloride, and then adding about 3 mols of alkali metal hydroxide to the mixture while maintaining the temperature of the reaction mixture within the range of about 0°C. to 25°C.

"28. A polymerized dehydrohalogenated reaction product of (A) a monohalohydrin of a saturated aliphatic trihydric alcohol wherein said alcohol contains from 3 to 10 carbon atoms and wherein the halogen is selected from the group consisting of chlorine, bromine and iodine with a compound (B) represented by the general formula wherein X represents a halo-

gen, Y represents a member selected from the group consisting of (a) a member selected from the class consisting of hydrogen and alkyl, alkenyl, aryl, alkaryl and aralkyl radicals, (b) amine radicals represented by the formula—NRR′ and R and R′ each represents a member having the same meaning as (a), and (c) radicals represented by the formula ·—OR″ where R″ represents a mem-

---

[1]. Numbered 4, 12 to 14, 19, 25, 26, and 28 to 31.

[2]. Serial No. 365,553, filed July 1, 1953.

ber selected from the class consisting of alkyl, alkenyl, aryl, alkaryl and aralkyl radicals, and n represents an integer which is at least 1 and not more than 3."

The board rejected three separate groups of claims, each for a different reason. We must therefore deal with them accordingly.

Claims 4 and 12 to 14 were rejected by the examiner as being improper product-by-process claims, also as indefinite within the provisions of 35 U.S.C. § 112 in failing to recite the essential procedural steps in the process.

The board affirmed the examiner's rejection, stating that product-by-process claims are improper where it is possible to describe the product in terms of its chemical structure, referring to the allowed claims to show that the invention can be claimed in terms of chemical structural formulas alone.

Appellants, in challenging the propriety of that rejection, argue that while the general proposition of law relied upon by the board may be sound, its application to the instant facts is not, since the allowed claims, defined in terms of structure, are limited to monomeric compounds and do not encompass the possible formation of dimers and trimers. They urge, therefore, that the product-by-process claims are necessary to cover a portion of the invention not covered by the allowed claims, and that dimers and trimers are incapable of structural definition.

 The solicitor notes, and we agree, that the record fails to show that the above arguments were ever presented to the examiner or the board and that those contentions, not having been made below, cannot properly be raised here. In re Panagrossi, 277 F.2d 181, 47 CCPA 904, and In re Herthel, 174 F.2d 935, 36 CCPA 1095.

 For us to determine the propriety of appellants' contentions, without the benefit of the examiner's and the board's view thereon, would necessitate our own determination of technical facts, such as whether the specification discloses a process for making of dimers and trimers and, if so, what reaction conditions are necessary or critical in order to obtain those products rather than a monomer or a polymer. Additionally, we would have to consider whether it would be possible to define said dimers or trimers structurally. The answers to those questions require skill in the art of which we are not possessed. Consequently, we will not delve into them without having the benefit of prior consideration below. Since those are the *only* contentions of error advanced by appellants as to claims 4 and 12 to 14, and since appellants concede that the legal proposition relied on by the board is sound, there are no grounds of reversible error before us. We, therefore, *affirm* the board's rejection of claims 4 and 12 to 14.

In order, however, to make our position clear, and avoid any need for considering the possibilities of remand of the case for reconsideration of the above question, we shall consider the examiner's other ground for refusal of claims 4 and 12 to 14, viz., that the claims are indefinite for failure to recite the essential procedural steps in the process. The board noted:

" * * * Contrary to appellants' arguments the 'dehydrohalogenated polymerizable reaction product of (A) * * * with a compound (B) * * *' is, in our opinion, a product-by-process claim. This term not only includes the 'reaction product' term which broadly refers to an unspecified reaction of the two compounds but also incorporates 'dehydrohalogenated' which obviously requires a further chemical reaction of said reaction product under unspecified conditions."

We agree with that analysis of the facts. Appellants claim, broadly, a polymerizable "reaction product of (A) * * * with a compound (B)." There are no limitations which serve to indicate what compounds will result. It seems reasonably clear that the product of such reaction will be determined by reaction conditions, proportions of reactants, etc.

none of which is recited in the claims. The product is additionally described as being "dehydrohalogenated" and "polymerizable." The term "polymerizable" is indicative merely of the fact that the resulting product, whatever it may be, is still capable of further polymerization. It does not help to define what the resultant product is.

In order that the reaction product be "dehydrohalogenated," a *second* reaction beyond mere interaction of (A) and (B) need take place. That is obvious from appellants' specification which states:

> "*The reaction involved in the process of our invention is a two-step mechanism.* For example, when cyanuric chloride is reacted with glycerol-alpha-monochlorohydrin in a suitable solvent under mild heating conditions and with the addition of a suitable HC1 acceptor, a chlorohydroxypropyl cyanurate type derivative is first formed. *The additional HC1 acceptor added to the reaction mix dehydrohalogenates the chlorohydroxypropyl groups to glycidyl radicals, thus forming a polymerizable product* containing both the oxirane and triazine groups."
> (Italics supplied.)

The conditions necessary for such reaction are not specified in the claims. We agree that claims 4 and 12 to 14 lack certainty as to the product which will, in fact, be produced by the recited process steps, and *affirm* the examiner's rejection of claims 4, 12, 13, and 14 as indefinite.

Claims 25 and 26 are rejected on the ground the specification does not support said claims. Claim 25 is a process claim having specific limitations. It includes the steps of mixing 3 mols of an epoxyalkanol with a mol of cyanuric chloride, then adding about 3 mols of alkali metal hydroxide to the mixture, while maintaining the reaction temperature at 0–25°C. Claim 26 differs from claim 25 in defining the epoxyalkanol as glycidol, and the alkali metal hydroxide as sodium hydroxide.

The only question involved with respect to claims 25 and 26 is whether appellants' disclosure as a whole is sufficient to support those claims.

We have recently had occasion to state the law applicable in a case such as this in Jepson v. Coleman et al., 314 F.2d 533, 50 CCPA ——, wherein we said:

> "When one copies claims from a patent for the purpose of instituting interference proceedings, in order to be successful, that person's application must clearly support those counts. * * * It is not a question whether one skilled in the art *might* be able to construct the patentee's device from the teachings of the disclosure of the application. Rather, it is a question whether the application necessarily discloses that particular device. * * *"

In support of their contention that the disclosure properly supports the claims, and specifically to show the interchangeability of glycerol alpha-monochlorohydrin and glycidol in the reaction with cyanuric chloride, appellants urge that we consider certain prior art and particularly a Bradley et al. patent[3] from which the instant claims were copied.

Though prior art may be used to show what matters would lie within the knowledge of one skilled in the art to explain ambiguities in an application, it cannot be used to supply specific limitations not found therein. The question is not what modification of appellants' disclosure might occur to one skilled in the art, it is rather whether the invention they are claiming is *described* in their specification.

We turn, therefore, to the specification. The examiner in rejecting claims 25 and 26 stated:

> " * * * There is no specific disclosure of the 3 moles of glycidol, 1 mole of cyanuric chloride or 3 moles of alkali metal hydroxide required by the claims nor does the specification point out at what temperature

---

3. U.S. Patent No. 2,741,607, issued April 10, 1956.

the glycidol is to be reacted with the cyanuric chloride. \* \* \* "

The board, in affirming the examiner, added:

" \* \* \* Not only does the specification fail to disclose a specific embodiment of the reaction of an epoxy alkanol with an ester of cyanuric acid, but it fails to suggest the substitution of an epoxy alkanol for the corresponding monohalohydrin specifically disclosed as operative to produce the desired product. \* \* \* "

Appellants argue that the last sentence in their specification discloses the interchangeability of glycerol alpha-monochlorohydrin and glycidol. That sentence reads:

" \* \* \* Furthermore, dehydrohalogenation of glycerol-alpha-monochlorohydrin to glycidol followed by reaction of a cyanuric halide or halotriazine in the presence of an acid acceptor or analogous treatment with other suitable halohydrins offers an alternative means of making the products of the type described."

■ We find that statement to suggest broadly that an alternative method of making esters of cyanuric acid may exist, rather than to suggest, *per se*, the interchangeability of the two reactants, mentioned above, in the process disclosed in the specification. That suggestion does not support the claimed process since, as held by the board, the limitations with respect to the reaction conditions, the proportions of the reactants and the acid acceptor, as well as the temperature range specified in the claims, are absent from the specification. We have considered the specific arguments made by appellants and the disclosure as a whole, but are unable to agree that the disclosure would teach one skilled in the art how to reconstruct the *specific* process claimed using glycidol as the starting material rather than glycerol alpha-monochlorohydrin. We base our conclusion on the fact that the *claimed* reaction does not merely constitute a simple replacement of the monochlorohydrin with glycidol in the process disclosed in the application, but rather that it constitutes, as pointed out by the examiner, an entirely different chemical reaction. What is claimed is the reaction of a halotriazine with an epoxy alcohol. That is entirely different from the reactions shown in the specification which are the reaction of a monohalohydrin of a saturated aliphatic trihydric alcohol with a halotriazine followed by dehydrohalogenation thereof. Consequently, the claimed process is drawn to different proportions of different reactants and reacted under different conditions than those disclosed in appellants' specification. Appellant cannot describe one invention and claim another. In re Panagrossi, supra. We find no error in the board's rejection of claims 25 and 26.

The board affirmed the rejection of claims 28 to 31 as indefinite and too broad in defining the reaction products as "polymerized." It held that term to include not only homopolymers, but also all possible copolymers, and found such definition speculative. Since appellants concede that they intend said term to have the broad interpretation given it by the board, we need not concern ourselves further with the scope of that term. The sole question becomes whether the specification discloses copolymers, as appellants allege. In support of their arguments appellants point to an entire page of various oxirane triazines that may be used in their invention. That showing is merely one of equivalent triazines to be used in preparation of the claimed monomer. The breadth of that disclosure, however, entitles appellants merely to claim the triazine component broadly, as has been done in allowed claim 3. It is not relevant to the propriety of claiming copolymers of the oxirane triazines with other distinctly different monomers such as, for example, vinyl chloride.

Appellants rely also on the following statement from their disclosure to support their contention that, "the polymerizable materials of the present invention \* \* \* interpolymerize with

one another or with other polymerizable materials * * *.":

" * * * The polymerizable reaction products may be used in conjunction with other resinous or polymerizable compositions including urea-formaldehyde resins, melamine-formaldehyde resins, phenol-formaldehyde resins, polystyrene, polyamides, polyester amides, copolymers derived from unsaturated polyesters and vinyl monomers, copolymers of vinyl chloride and acrylonitrile, acrylonitrile and vinyl acetate or in conjunction with alkyd resins, other epoxy resins as well as silicone resins."

In our opinion that statement does not teach or even remotely suggest *copolymerization* of appellants' monomer with any of the materials mentioned. Copolymerization, as appellants' citation of definitions in their brief recognizes, is a chemical interaction of different *monomers* to produce a polymer, or a resin. The statements in appellants' application merely suggest that appellants' monomeric reaction products may be *used in conjunction with*, that is *admixed with* other polymers or resins. Whether these materials react with each other, and if so in what manner, and if so what the resulting material will be is not disclosed. The specification teaches only that mixtures may be used. Hence, that recitation supports only mixtures of appellants' monomer with certain polymers and not copolymers formed by chemically reacting appellants' monomer with other *monomers*. Having found no teaching of copolymers such as appellants urge and as would be required to support the term "polymerized" we agree that term is too broad; thus, it fails to comply with the requirements of 35 U.S.C. § 112. We, therefore, *affirm* the rejection of claims 28 to 31.

The board, apparently through inadvertence, failed either to affirm or reverse the examiner's rejection of claim 19. Appellants state in their brief:

"We think it is obvious that the Board's reversal of the Examiner's rejection of claims 18 and 20–23 is also applicable to Claim 19 and that the Board's failure to mention this claim as being allowable was an oversight. * * * we believe this error will be corrected by the Patent Office after the present appeal has been decided; therefore we do not think it will be necessary for the Court to take any action in the matter."

The solicitor agrees. We appreciate the cooperation of the parties and will treat the appeal as to claim 19 as withdrawn.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge, concurs in result only.