50 CCPA

**Application of Gunther WILKE and Werner Pfohl.**

**Patent Appeal No. 6854.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

Worley, Chief Judge, dissented.

Burgess, Dinklage & Sprung, New York City (Arnold Sprung, New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

SMITH, Judge.

The Patent Office Board of Appeals affirmed the examiner's rejection of twelve claims, numbered 18 through 27, inclusive, 36 and 37,[1] of appellants' patent application[2] entitled "Carboxylic Acid Anhydrides, Carboxylic Acids and Carboxylic Acid Esters of the Cyclododecane Series, and A Process For Their Production."

Of the remaining claims on appeal, the invention is claimed in claims numbered 18 through 27, inclusive, in terms of a process for producing novel reaction products from maleic acid anhydride and the specified cyclohydrocarbon. Claim 18, considered illustrative by the board, is the generic claim upon which the other claims in this series depend. Claim 36 claims the invention in terms of a product embodying any one of four carboxylic acid anhydrides defined by structural formulae which are placed in a Markush group.

Appealed claims 18 and 36 are as follows:

"18. A process comprising reacting at an elevated temperature from 1–4 molecules of maleic acid anhydride with one molecule of a triolefine which is a member selected from the group consisting of cyclododeca-tri-(1,5,9)-ene and trivinyl cyclohexane and recovering the reaction product thereby formed.

1. Appellants' attorney stated at oral argument that no appeal was taken from the rejection of claim 37.

2. Serial No. 780,921, filed December 17, 1958.

560

"36. A member selected from the group of carboxylic acid anhydrides having the following general formulae:

**1)**

**2)**

**3)**

and **4)**

The specification states that the novel compounds, carboxylic acid anhydrides, carboxylic acids and the carboxylic acid esters of the cyclododecane series (whose structure is not known with certainty), are obtained when a cyclododecatri-(1,5,9)-ene or a trivinyl cyclohexane are reacted with maleic acid anhydride. The reaction products so obtained are in the form of the anhydrides which are convertible into carboxylic acids by saponification, or into esters by esterification. The properties of the products are said to depend upon the number of acid groups present, which can vary from 2 to 6 or 8 and on the constitution of the alcohols used for esterification. As indicated by claim 36, the reaction products can vary from a 1:1 addition product to a 1:4 addition product of a cyclododecatri-(1,5,9)-ene or a trivinyl cyclohexane and a maleic acid anhydride.

In carrying out the disclosed process for making such a product, temperatures of from 150°C to 250°C may be used, with or without an inert solvent. Variation in reaction time produces different reaction products. Seven specific examples are described, in which the reaction products are said to be resinous or viscous liquids. Despite this fact, appellants here claim the invention in terms of both product and process.

The issue here has been unnecessarily confused by the statement of the grounds of rejection in the examiner's answer and the affirmance of this rejection by the board without clarification as to the precise reason for the rejection. The rejection as stated in the examiner's answer is as follows:

"All of the claims stand finally rejected as being based on an *insufficient disclosure with respect to utility and failing to comply with 35 U.S.C. 112*." [Emphasis added.]

The board in its opinion treats the rejection:

" * * * as based upon an insufficient disclosure of utility, i. e., a disclosure of how to use the products as required by 35 U.S.C. 112."

Appellants, in their brief, apparently agree with the board that:

"The claims before this Court were finally rejected by the Primary Examiner as being based upon an insufficient disclosure of utility, i. e. a disclosure of how to use the products as required by 35 U.S.C. 112 and this rejection was affirmed by the Board of Appeals. * * * "

"The sole issue involved herein is, therefore, whether the specification as filed contains a written description indicating a use for the invention sufficient to meet the requirements of 35 U.S.C. 112."

The solicitor, however, here takes a different view as to the meaning of the examiner's rejection and the issues presented by it. This view as stated in the solicitor's brief is as follows:

"Though the decision of the Board of Appeals paraphrases this rejection as one based upon an insufficient "disclosure of how to use the products as required by 35 USC 112" * * *, it is implicit in the Board's affirmance of the decision of the examiner and the reliance upon the quotation from In re Bremner et al., 37 CCPA 1032, 182 F.2d 216 * *, that the examiner's rejection raises a question involving 35 USC 101 as well as 35 USC 112. Hence, appellants' statement that "no rejection under 35 USC 101 has been entered so that there is no question of usefulness involved herein" * * * is believed to be incorrect. It is submitted that the reasonable construction of the sentence quoted above from the examiner's answer is that the use of the conjunction "and" between the phrases "an insufficient disclosure with respect to utility" and "failing to comply with 35 USC 112" is that two distinct reasons are set forth, *one being based upon section 101 (by implication) and the other, upon section 112 (expressly).* * * * " [Emphasis added.]

A reasonable compliance with 35 U.S.C. § 132 and Patent Office Rule 104 should

have resulted in such a statement of the ground of rejection that no basis could here exist for such a divergence of views. This divergence presents a separate ancillary issue which requires us to initially interpret the rejection before determining the principal issue presented for decision. We do this despite what seems to us to be the clear intent of 35 U.S.C. § 132 that the examiner should so state the rejection that there is no ambiguity as to the grounds therefor. Confusion as to the precise statutory ground of rejection such as is here present was also present in In re Nelson and Shabica, 280 F.2d 172, 47 CCPA 1031, 1033. Here, as there, the confusion appears to have arisen from a failure of the examiner to separate the so-called "utility" requirement of 35 U.S.C. § 101 from the "how to use" requirement of 35 U.S.C. § 112. Despite the present effort of the solicitor to bring 35 U.S.C. § 101 into this appeal, we agree with the board that the rejection of the appealed claims is based solely on appellants' failure to disclose their invention as required by 35 U.S.C. § 112.

Before a determination can be made as to the sufficiency of a disclosure under 35 U.S.C. § 112, it is necessary to determine what is claimed as the invention in the rejected claims.

■ As previously stated, the rejected claims are of two types. Claim 36 is directed to allegedly novel products while claims 18–27, inclusive, are drawn to "a process". 35 U.S.C. § 112 requires that the specification shall contain not only a written description of "the invention" but also "of the manner and process of making and using it." This requires appellants, because their invention relates to *both* process *and* product, to describe in writing not only the manner of using the process but also to disclose the manner of using the product before the statutory prerequisites to patentability are met. That is to say, where "the invention" claimed is a *process,* the requirements of 35 U.S.C. § 112 may be met by a written description of the manner of using the claimed *process.* How-

ever, such a description of the manner of using the process may not be a sufficient compliance with 35 U.S.C. § 112 where "the invention" claimed is a *product.*

We shall now proceed to a consideration of the written description found in appellants' specification, and analyze the appealed claims to determine, in the light of the foregoing observations, to what extent appellants have complied with 35 U.S.C. § 112.

Appellants rely upon two statements in their specification to provide the disclosures required by 35 U.S.C. § 112. These statements are as follows:

"* * * The addition products with more than 1 molecule of maleic acid anhydride, and more especially those with 3 molecules of maleic acid anhydride, have an interesting spider-like structure and on esterification, give polycarboxylic acid esters which have very valuable properties as plasticizers. * * *

* * * * * *

"* * * This can be particularly advantageous if the products produced according to the process of the invention are reacted with other suitable substances, for example for the purpose of manufacturing synthetic resins, because in that event additional opportunities for varying the properties of the synthetic resin arise from the presence of the double bonds. * * * *"

In determining the sufficiency of these disclosures, we shall take up and discuss separately (1) the product claim, 36, and (2) the process claims 18–27, inclusive.

### (1) *Product Claim 36*

We observe that this claim is directed to a Markush grouping of four carboxylic acid anhydrides, each of which is represented by a structural formula. The claim appears to set out "the subject matter which the applicant regards as his invention" as required by the second paragraph of 35 U.S.C. § 112. The issue presented, however, is whether the claim as drawn is supported by a "writ-

ten description of the invention," which tells the "manner and process of * * * using it" and which sets forth "the best mode contemplated by the inventor of carrying out his invention." Appellants to support their position have pointed to portions of the specification which disclose reactions to produce "synthetic resins" as well as use of the reaction products in the formation of "plasticizers." They point particularly to Example 7 in the specification which discloses how to esterify the triple addition product of maleic acid anhydride with cyclododecatri-(1,5,9)-ene.

Appellants' position as to the written description of their invention to support claim 36 is not sound upon analysis. The claim presents four structural formulae, numbered 1) to 4), inclusive. The claim is directed to "a member" selected from this group of four separate structural formulae. Under these circumstances, we must look to the specification to determine whether or not it contains the written description required by 35 U.S.C. § 112 with regard to the product defined *by each member* of the group called for by the claim. Appellants, in urging the sufficiency of their specification under 35 U.S.C. § 112, have directed our attention to the above-quoted portions of the specification wherein it is asserted that the art is taught "how to use" the products covered by claim 36.

As above indicated, one reference in the specification concerns use of these products in reactions for the production of "synthetic resins." The specification states further in this connection:

"As has already been stated above, all products obtained by the process still contain double bonds as well as the acid anhydride groupings. This can be particularly advantageous if the products produced according to the process of the invention are reacted with other suitable substances, for example for the purpose of manufacturing synthetic resins, because in that event additional opportunities for varying the properties of the synthetic resin arise from the presence of the double bonds. The double bonds can of course also be hydrogenated, and in this case saturated dicarboxylic or higher polycarboxylic acid anhydrides are obtained, and there [sic] may be hydrolysed to the corresponding dicarboxylic or higher polycarboxylic acids, which anhydrides and acids are distinguished by a particularly high resistance to secondary modifications, such as oxidation, because of the absence of the double bonds."

This description does not constitute a compliance with 35 U.S.C. § 112 for it fails entirely to set forth a manner and process of using the product for manufacturing synthetic resins or of reacting the product for other purposes with "suitable substances." We do not think any person skilled in the arts encompassed by the foregoing quoted portion of the specification would be enabled by such a description to use all the products falling within claim 36. The broad description of the product as containing "double bonds as well as the acid anhydride groupings" does not supply such information that any person skilled in this art would be able from such a description in the specification to carry out the general uses of the claimed product within the broad language of the above-quoted portion of the specification.

The other description in the specification which appellants assert constitutes a teaching of how to use the product is again quoted:

" * * * *The addition products with more than 1 molecule of maleic acid anhydride,* and more especially those with 3 molecules of maleic acid anhydride, have an interesting spider-like structure and, on esterification, give polycarboxylic acid esters which have very valuable properties as plasticizers. * * * " [Emphasis added.]

Example 7 in the specification teaches how to esterify certain of the claimed products to form the polycarboxylic acid

esters which are said to "have very valuable properties as plasticizers."

It is to be noted, however, that this description is limited to the esterification of addition products of *more than 1 molecule* of maleic acid anhydride and that example 7 specifically discloses the use of a product falling within the second structural formula contained in claim 36. This formula shows *3 molecules* of maleic acid anhydride. The specific limitation to addition products of *more than 1 molecule* of maleic acid anhydride in the above-quoted portion of the specification at the most would teach a person skilled in this art that the addition products of structural formulae 2) and 4) of claim 36 would on esterification give polycarboxylic acid esters for which utility is asserted by reason of their alleged "very valuable properties as plasticizers." To the extent that any person skilled in this art is taught how to use the products of claim 36, as required by 35 U.S.C. § 112, the actual description in example 7 of how to esterify the addition products is limited to products falling within the second structural formula of claim 36.

We have been unable to find any description in the specification of how to use the addition products of structural formulae 1) and 3) of claim 36, having but 1 molecule of maleic acid anhydride, to form the esters which are asserted to have "valuable properties as plasticizers." In fact, it seems to us that the effect of the limitations stated with respect to the addition compounds which are to be so esterified would be interpreted by a person skilled in this art as limiting this description of how to use the product to the addition products of formulae 2) and 4) of claim 36. We think a person skilled in this art would be aware of important differences as well as the similarities of the addition products having the structural formulae of claim 36. This awareness of the differences when combined with the specific limitations in appellants' description as to which of the products may be esterified to form plasticizers would in our opinion indicate to a person skilled in this art that he should not attempt esterification of the products of formulae 1) and 3) of claim 36 to form plasticizers.

▪ Thus, we are unable to find *any* description of *how to use* two of the four addition products grouped in claim 36. We therefore affirm the rejection of claim 36 under 35 U.S.C. § 112 as being based on an insufficient description of how to use the claimed products.

### (2) *Process Claims 18–27*

▪ In its affirmance of the rejection of the process claims, the board relied upon In re Bremner et al., 182 F.2d 216, 37 CCPA 1032, wherein the court stated:

> "It was never intended that a patent be granted upon a product, *or a process of producing a product,* unless such product be useful." [Emphasis added.]

As we stated in In re John A. Nelson and Anthony C. Shabica, supra:

> "The descriptions in patents are not addressed to the public generally, to lawyers or to judges, but, as section 112 says, to those skilled in the art to which the invention pertains or with which it is most nearly connected. The sufficiency of a specification must be tested in the light of this fact and judged by what it conveys to those who *are* skilled in the art. The judge's task is to decide whether from the disclosure the man skilled in the art can make the invention and use it. If he can, this part of the statute is complied with, subject to the one further requirement that the inventor describe the best mode contemplated by him of carrying out his invention." (280 F.2d at 181, 47 CCPA at 1045).

Later in adhering to In re Bremner et al., supra, we stated:

> " * * * In adhering to the Bremner rule we wish to make it clear, however, that the test is what the application as a whole *communicates* to one skilled in the art. In some cases an applicant may, merely by naming his new instrument or mate-

rial, indicate what its use is, as, for example, by saying he has invented a 'match,' 'hammer,' 'paint,' 'adhesive,' or 'detergent.' He may or may not have to go further in order to *enable* others to use the invention, depending on its nature and on how much those of ordinary skill in the art know. In other words, compliance with the law does not necessarily require specific *recitations* of use but may be inherent in description or may result from disclosure of a sufficient number of properties to make a use obvious; and where those of ordinary skill in the art will know *how* to use, the applicant has a right to rely on such knowledge. If it will not be sufficient to enable them to use his invention, he must supply the know-how. As this court has often said before, each case must be judged on its own facts." (280 F.2d at 184, 47 CCPA at 1048–1049).

We here add to this observation, that the standard of 35 U.S.C. § 112 when so interpreted is a factual standard and as such requires us to consider what may be the expected knowledge of a person skilled in the pertinent art at the time the invention was made. This necessarily requires us to consider the constantly increasing body of technical and scientific knowledge which such a person may be expected to have. Thus, this standard now may well be different from that applied by this court in 1950, the date of the Bremner decision.

We pass now to an analysis of process claims 18–27, inclusive, to ascertain whether they are in fact directed to an invention which is adequately supported in the specification to meet the requirements of 35 U.S.C. § 112. These claims are each *process claims* directed to certain process steps disclosed in the specification to produce the products disclosed therein. Accordingly what we are here concerned with is whether the claims are adequately supported by disclosures meeting the specific requirement of 35 U.S.C. § 112 that the inventor shall include in his specification "a written description of the invention, and of the manner and process of making and using it" which also set forth "the best mode contemplated by the inventor of carrying out his invention."

When so considered, we find that claims 18–27, inclusive, are sufficiently supported by the specification. Referring to these claims it will be seen claim 18 recites the conditions for a process which involves a reaction using from "1–4 molecules of maleic acid anhydride". The process produces a product which is described as being an intermediate in the production of a plasticizer. Claims 19 and 20, both dependent upon claim 18, specify preferred reaction temperatures and are similarly supported. Claims 21, 22 and 23 specify various inert solvents to be used in the process of claim 18 and are similarly supported.

Claim 24 specifies a process in which the reaction product is a product in which one molecule of maleic acid anhydride has been added to one molecule of triolefine. It differs from claim 18 and the other claims in employing an excess of the triolefine in order to produce a product having a particular chemical configuration. Claim 25 is dependent on claim 18 but specifies that the reaction is so conducted that the product shall be a product in which three molecules of maleic acid anhydride have been added to one molecule of triolefine. Claim 26 adds to the process of claim 18 the step of hydrolizing the intermediate products of claim 18 to form the corresponding carboxylic acid. Claim 27 adds to the process of claim 18 the step of esterifying the products formed therein.

It is our opinion, therefore, that claims 18–27, inclusive, define the steps of the process disclosed in the specification and that such steps are disclosed in the specification sufficiently to teach one of ordinary skill in this art how to carry out *the claimed process*. This is a sufficient compliance with 35 U.S.C. § 112. We decline to apply to these process

claims the statement in the Bremner case from which the Patent Office has extracted the so-called "rule of Bremner," i. e., that the specification must teach a use for the product of a claimed process. Had this been the intent of Congress, we are certain that it would have been so stated in 35 U.S.C. § 112. Instead, the language of 35 U.S.C. § 112 where applied to a *process* requires no more than has been here disclosed.

For the above reasons, we *affirm* the rejection of claim 36 but *reverse* the rejection of claims 18–27, inclusive.

Modified.

WORLEY, Chief Judge (dissenting).

It seems to me that the reasons and conclusion of the examiner and the board are sound, consistent with precedents laid down by this court, and should, therefore, be affirmed.