50 CCPA

**Application of Winifred June ADAMS, David Neville Kirk and Vladimir Petrow.**

**Patent Appeal No. 6889.**

United States Court of Customs and Patent Appeals.

April 25, 1963.

Martin, J., dissented in part.

Bacon & Thomas, Washington, D. C. (Jesse B. Grove, Jr., Washington, D. C., of counsel) for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Associate Judges.

ALMOND, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1 to 18 of appellants' application Ser. No. 580,448, filed April 25, 1956.

The invention relates to certain 4-chloro-3-oxo-$\Delta^4$-steroids of the androstane and pregnane series and the method of making them. The compounds differ from known 3-oxo-$\Delta^4$-steroids in having a chlorine atom attached to the number 4 carbon atom of the steroid nucleus.

Claims 1 and 10 are representative and read:

1. 4–Chloro–3–oxo–$\Delta^4$–steroids of the androstane and pregnane series having the general formula

10. A method for the preparation of 4–chloro–3–oxo–$\Delta^4$–steroids of the androstane and pregnane series, which method comprises chlorinating a 3–oxo–$\Delta^4$–steroid of the androstane and pregnane series having the general formula

and treating the resulting $4\xi{:}5\xi$-dichloride having the general formula

to remove the elements of hydrogen chloride therefrom.

No references are relied upon, the sole ground of rejection being that the disclosure of how to use the compounds is insufficient to satisfy the requirement of 35 U.S.C. § 112.

The appellants' specification, insofar as the disclosure of how to use the invention is concerned, states first:

"It is an object of the present invention to provide new 4-chloro-3-oxo-$\Delta^4$-steroids of the androstane and pregnane series which are of value on account of their biological properties or as intermediates in the preparation of compounds with useful biological properties."

Secondly, another portion of the specification states:

"The process of the invention may be applied to a variety of 3-oxo-$\Delta^4$-derivatives of the *cyclo*-pentenophenanthrene series. In particular, the process of the invention may be applied to steroid hormones containing the 3-oxo-$\Delta^4$-system to give the 4-chloro-analogues of the aforesaid hormones, which new compounds will, in general, possess biological properties."

The examiner and the Board of Appeals discussed only the first quoted portion of the specification, and said nothing of the second.

As to the first, the board said:

"We do not regard the disclosure that appellants' compounds have 'biological properties' to be as [sic]

sufficient disclosure of utility. The term 'biological properties' is inclusive of a vast field of properties relating to plant or animal life. Included within such term are insecticidal, fungicidal, herbicidal, germicidal and other toxic properties. We agree with the Examiner that the meaning of the term 'biological properties' is so broad as not to be indicative of any particular utility."

The appellants rely on the disclosure of 4-chloro-analogues of known steroid *hormones* as indicating to one skilled in the art to which the invention pertains just what "biological properties" are contemplated. The solicitor objects to the reliance on this portion of the specification because "The point now raised was not raised in the Patent Office, though appellants had ample opportunity to do so." The disclosure relating to steroids having hormonal properties is said to be a new contention that cannot properly be raised here, citing In re Herthel, 174 F.2d 935, 36 CCPA 1095; In re Panagrossi et al., 277 F.2d 181, 47 CCPA 904.

■■■ We are of the opinion that appellants may rely on all of their specification even though the *argument* below centered about a portion of the specification which did not contain the term "hormone." There is nothing in the Herthel or Panagrossi et al. cases that precludes reliance on all of the specification to show that the disclosure is sufficient to satisfy the requirements of the first parargaph of 35 U.S.C. § 112. The specification was before the examiner and the board from its filing date, and they have ruled that the disclosure of the claimed invention therein is not sufficient "to enable any person skilled in the art * * * to make and use the same." 35 U.S.C. § 112. While appellants may not raise new *issues* or introduce new *evidence* on appeal, the evidence here, that is, the specification, has been in the case since April 25, 1956.

■■■ Considering the entire disclosure rather than the words "biological properties" only, it seems clear that one

skilled in the art would know how to use the invention. Looking first to the method claims, there is no question that the method is operative and useful. The examiner and the Board of Appeals apparently were of the opinion that the method claims and the compound claims stand or fall together, since the two classes of claims have not been separately considered. However, the content of a sufficient disclosure need not be the same for a method as it is for a product. The disclosure of how the product is used is not required to be as complete in order to show how to use the method of making the product as it is with product claims. In re Wilke, 314 F.2d 558, 50 CCPA ——. The method is used for making the compounds. We have no doubt that the disclosure is sufficient, insofar as the method claims are concerned, to satisfy the requirement of 35 U.S.C. § 112.

A more difficult issue arises with the compound or product claims. Have appellants shown how to use the new compounds? We are of the opinion that when the *entire* disclosure, taken as a whole, is considered, one skilled in the art would be enabled to use the compounds. To take a specific example, it seems apparent that a steroid chemist would know that testosterone is the naturally occurring male hormone. It seems likely that the steroid chemist would then know how to use 4-chloro-testosterone, the compound recited in claim 3. Whether or not the results in use are the same or inferior or superior, the specific field of use would be indicated to a steroid chemist. No further skill would be required to use the compound in the manner in which the naturally occurring analogue is used. We agree with the appellants' statement that: "It strains the imagination to think that a steroid chemist would believe that 3-oxo-$\Delta^4$-steroid compound of the androstane or pregnane series, readily perceivable to be analogous to a known steroid compound having hormonal properties, would be used for killing insects, or other equally remote use

from uses generally made for such steroids." Contrary to the statement of the examiner referred to by the board, it need not be "conclusively predicted" that androgenic or progestational activity is present in order to enable one skilled in the art to use the invention.

Under the view we take of the case, it is unnecessary to consider whether the disclosure of how to use the compounds as intermediates in the preparation of other steroids is sufficient.

For the foregoing reasons, the decision of the Board of Appeals is reversed.

Reversed.

WORLEY, Chief Judge, did not participate in this decision.

MARTIN, Judge (concurring in part and dissenting in part).

While I concur with the majority in the reversal of the board's decision as to the rejection of method claims 10 through 15, I am unable to agree with the reversal of the board's decision as to the rejection of compound claims 1 through 9 and 16 through 18.

The majority is of the opinion that when the *entire* disclosure, taken as a whole, is considered, one skilled in the art would know how to use the claimed compounds. The majority opinion states "it seems apparent that a steroid chemist would know that testosterone is the naturally occurring male hormone. It seems likely that the steroid chemist would then know how to use 4-chloro-testosterone, the compound recited in claim 3." From this we gather that the majority opinion considers that no further teaching would be required to use 4-chloro-testosterone in the manner in which the naturally occurring testosterone is used. I believe this is the crux of the opinion as to the reversal of examiner on claims 1 through 9 and 16 through 18.

I can find no statement in the application equating the biological activity of testosterone to that of 4-chloro-testosterone and the record does not indicate that such knowledge was known at the time

appellants filed their application. I take note that affidavits were filed more than two years after the filing date of appellants' application which prove that 4-chloro-testosterone propionate shows promise as a new growth promoting agent in ruminants and rats. However, such affidavits cannot have the effect of removing the deficiency of appellants' application as filed. See In re Mosher, 79 F.2d 911, 23 CCPA 740; In re Smyth, 189 F.2d 982, 38 CCPA 1130; and In re Herr, 304 F.2d 906, 907, 50 CCPA 705. It would also seem from the record that there is a high degree of unpredictability in the steroid field and that this unpredictability would render an assumption of related biological activity based on a similarity of structure of various steroid derivatives incorrect. The record indicates, for example, that cortisone has the structure

$CH_2OH$
$CO$
$CH_3$
----$OH$
$CH_3$

and that the closely related steroid (Reichstein's substance U) has the structure

$CH_2OH$
$HOCH$
$CH_3$
----$OH$
$CH_3$

Cortisone is known to be an active adrenocortical hormone. The record, however, states that Reichstein's substance U is *inactive*, even though it is analogous to cortisone in having the same fundamental ring structure. Therefore, it does not seem apparent to me that a steroid chemist would know how to use the claimed compounds from the information disclosed in appellants' application.

I would affirm the decision of the board as to claims 1 through 9 and 16 through 18, since I do not consider appellants' disclosure of how to use the compounds recited in those claims sufficient to satisfy the requirement of 35 U.S.C. § 112.