52 CCPA

**Application of Donald Bruce BOWMAN and Richard Wolfgang Emil Mosse.**

**Patent Appeal No. 7409.**

United States Court of Customs and Patent Appeals.

July 1, 1965.

906

Mason, Porter, Diller & Brown and Charles E. Brown, Washington, D. C. (Vincent L. Ramik, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1 through 10, being all claims in appellants' application [1] relating to moisture proofed cardboard cartons. Figs. 1 and 3 are illustrative:

The carton is formed from a cardboard blank which is cut and scored as shown in Fig. 1. The blank is coated on both sides with paraffin wax and folded to provide a rectangular bottom 5, a front, a rear and two side walls 6, 7, 8 and 9, with corner flaps 10 overlapping the inner surface of the side walls and a hinged top 14 with a front and two side cover flaps 15, 16 and 17 for overlapping the front and side walls. The overlapping corner flaps are secured to the inner surface of the side walls by heat-sealing in setting up the carton to receive its contents. In closing and sealing the carton, the overlapping front and side cover flaps are similarly heat sealed to the outside of the respective front and side walls. The sealing is accomplished through the application of a thermoplastic adhesive to the cardboard blank at those areas, designated 4 in Fig. 1, which form the inner surface of the side walls and corner flaps, before the blank is cut from the cardboard and coated with wax. The adhesive, which may be polyvinyl acetate resin, is incompatible with the wax, is non-tacky at normal temperatures, and softens at a temperature higher than the melting temperature of the wax.

A principal aspect of appellants' invention lies in the adhesive being applied to only one side of the blank and limited to such portions of that side that one, and only one, of each of two wax covered surfaces that are to be secured together by heat-sealing is provided with an underlying coating of adhesive. Appellants describe the sealing process as follows:

* * * During the heat-sealing operation the wax which is disposed

1. Serial No. 765,409, filed October 6, 1958.

between the overlying portions 12 of the corner flaps 10 and the side walls 8 and 9 is melted and is absorbed into the marginal portions 12 so as to provide on the sides of the marginal portions which face the side walls 8 and 9 substantially wax-free areas which are secured by the thermoplastic adhesive composition 13 to the side walls 8 and 9 by the continued application of heat and pressure.

\* \* \* \* \* \*

\* \* \* the closing of the carton after filling thereof is effected by the application of heat and pressure, \* \* \* so that wax which is located between the front and side walls of the body, and the front and side cover flaps is melted and is absorbed into the front and side walls respectively thereby to provide substantially wax-free areas of cardboard which are secured one to the other by the thermoplastic adhesive composition provided on the cover flaps and located between the cover flaps and the front and side walls.

Claims 1, 3, 5, 9 and 10 are representative:

1. A carton blank which when set-up to form a carton has portions of one side thereof overlying portions of the opposite side to permit heat-sealing of the overlying portions one to the other, said blank being flat and made of cardboard completely coated on each of the opposite sides thereof with wax and beneath the wax on said one side only with a thermoplastic adhesive composition which is incompatible with the wax, is non-tacky at normal temperatures, and is softened at a temperature higher than the melting temperature of the wax whereby wax disposed between the overlying portions is during the heat-sealing operation melted and absorbed into the overlying portion opposed to that coated with the adhesive composition to provide substantially wax-free overlying cardboard areas to be se-

cured one to the other by the adhesive composition located therebetween.

3. A method of making a carton blank which includes cutting and scoring cardboard to define the shape of the blank and lines along which folding is to be effected, completely coating each of the opposite sides of the cardboard with wax and before coating one of said sides applying thereto, as appropriate, a thermoplastic adhesive composition which is incompatible with the wax, is non-tacky at normal temperatures, and is softened at a temperature higher than the melting point of the wax, and permitting the adhesive composition to become non-tacky before coating thereof with the wax.

5. A carton made of cardboard and comprising a body portion having a rectangular four-sided bottom, a front wall, a rear wall, and two side walls all upstanding from the bottom and retained erect by infolded corner flaps, a top hinged to said rear wall and overlying said bottom, and front and side cover flaps depending from the top to overlie the outer sides of the front and side walls respectively, said carton before setting-up thereof being coated all over inside and out with wax, and the front, rear and side walls together with the front and side cover flaps being secured in position by a thermoplastic composition located beneath the wax and exposed by the absorption by the cardboard of wax by the application of heat to the composition coated regions of the carton.

9. A method of forming a carton having overlapped sealed surfaces comprising the steps of providing a flat blank formed of fibrous material, applying a thermoplastic adhesive composition which is incompatible with wax to selected areas of said flat blank, then completely coating opposite surfaces of said flat blank including the adhesively coated

areas with wax, next folding the blank from its flat state and assembling the blank into carton form with said adhesively coated areas overlying other areas, and then heating the overlapping surfaces with the wax of said overlapped surfaces being absorbed in the blank and the adhesive composition sealing together the overlapped surfaces.

10. The carton blank of claim 1 wherein the application of adhesive composition is limited to a surface to be disposed in opposing relation to another surface in the completed carton and only one of the intended to be opposed surfaces having the adhesive composition thereon.

The references relied on are:

| Mark et al. | 2,341,845 | February 15, 1944. |
| Hoffmaster et al. | 2,346,488 | April 11, 1944. |
| British Patent | 490,316 | August 12, 1938. |

Mark relates to a wax-coated cardboard carton, and discloses forming a carton from a blank of cardboard of a conventional shape which is folded to form a body portion with opposed ends each adapted to be closed by folding a half flap from each of two opposed sides into a single plane, then folding two full flaps, one from each of the other two sides in sequence into the same plane. It states that the four flaps at the bottom end of the carton are folded together and sealed with a conventional adhesive, there being no difficulties because that end "may be sealed before the carton is provided with a wax coating." The carton with the bottom closed is coated inside and out with wax. Before that, however, a heat-activable adhesive is applied to the surfaces of the flaps which form the top closure at such locations that both surfaces of each pair of flap surfaces to be sealed together has an adhesive coating. The adhesive is preferably applied at the time the blanks are being formed.

Hoffmaster discloses a carton formed from a single flat blank cut from cardboard, scored, folded and glued to provide a rectangular carton with a pair of overlapping end panels at each end.

A single layer of adhesive, applied to only one of the contacting surfaces of each pair of the overlapped panels, glues the panels together. No wax coating is disclosed.

The British patent discloses a collapsible cardboard box with a body portion and a hinged top made from a one-piece scored blank. The structure is formed from a blank, cut and folded in a manner generally similar to appellants' carton as illustrated above. The box is set up by bending up front, rear and side walls, folding corner pieces inwardly into triangular flaps and turning the flaps against the front and rear walls. Front and side walls of a closure flap are inserted into the body portion when the box is closed and serve to lock the triangular flaps against the front and rear walls. The carton is not coated with either wax or adhesive and is not sealed.

The examiner and board regarded the claims as unpatentable over various combinations of the references, with Mark being applied, either alone or in combination, against each claim. Claims 1, 2 and 10 were stated by the examiner to be so broad and indefinite as to be unpatentable over Mark. Claims 3, 4, 7 and 9 were additionally rejected as an obvious method of making the article.

The board, as well as the examiner, recognized that Mark discloses by specific example that the surfaces to be sealed together are each provided with an adhesive coating under the wax coating. However, it took the view that other portions of that reference either disclose that one of such surfaces only might be coated with adhesive or make such modification obvious. It further appears to have relied on Hoffmaster as suggesting that only one of the opposing surfaces to be sealed together in Mark have adhesive composition thereon.

We do not agree that the references either disclose or make obvious the provision of an undercoating of adhesive on only one of two wax coated surfaces to be sealed together so that the seal is formed as disclosed by appellant.

Mark describes the heat sealing of the tab surfaces coated with both adhesive and wax as follows:

\* \* \* Under the influence of the heat the wax layers \* \* \* will become fluid and will be caused by the pressure to flow from between the flaps permitting the adjacent layers of adhesive to come into direct contact. These two layers will then fuse together forming an adhesive bond \* \* \* uniting \* \* [the] flaps. \* \* \*

That operation, whereby coatings of adhesive on both opposed surfaces result in the wax flowing outside those surfaces, is distinguished from appellants' operation where the omission of adhesive from one surface results in absorption of the wax to permit sealing.

The board regarded it "apparent" that Mark discloses applying adhesive to only one side of the flaps in view of the following statement:

\* \* \* In some cases the adhesive will be applied to both sides of all the flaps by roll coating the stock while it is still in the form of a web. The slight additional cost of the adhesive on the flap sides which need not have been coated is more than offset by the saving which this simplification of the coating procedure permits.

However, that statement follows immediately after a description of how the adhesive is applied to the flaps in the form of the invention described in detail in the patent. That description discloses that the full closure flap which is sealed on its bottom side to the top of the two half flaps, and on its top side to the bottom of the other full closure flap is itself coated with adhesive on both sides while the other three flaps are so coated on only one side. It is evident that the board's quotation is merely pointing out that the other three flaps might also be coated on both sides, which construction would still provide the type of seal Mark discloses, although result-

ing in unnecessary adhesive coatings on some unsealed surfaces. The statement does not suggest a different sealing arrangement with only one of the sealed surfaces coated with adhesive so that the other absorbs the wax.

The board also relied on claims 1, 3 and 8 of Mark for disclosures additional to the specific example disclosed in the specification and drawing. Those claims read:

1. The method of forming a container which comprises forming a container blank having a seam area adapted to be adhesively joined to another seam area of the blank to form a seam, applying to the seam area a heat-activable adhesive immiscible with wax, and then coating the blank and adhesive with a wax.

3. A container blank comprising a blank body having a seam area adapted to be united to another seam area in forming the blank into a container, a layer of a heat-activable adhesive on the surface of the body and within a seam area and a coating of fusible air and moisture excluding material immiscible with the adhesive covering the body and overlying the adhesive.

8. The method of forming a container which comprises forming a container blank having a seam area adapted to be adhesively joined to another seam area of the blank to form a seam, applying to the seam area a heat-activable adhesive, and then coating the blank and the adhesive with a coating of fusible air and moisture excluding material immiscible with the adhesive.

We think it clear that those claims do not suggest appellants' concept that only one of each pair of surfaces to be sealed together be provided with an adhesive coating under its wax covering layer.

While Hoffmaster does disclose glue applied to only one of two surfaces to be sealed together in forming a carton, there is no wax coating on the carton.

Thus that patent does not suggest that the problem of obtaining a good seal between waxed surfaces can be solved by providing an undercoating of adhesive on only one surface and causing the wax to be absorbed into the cardboard providing the other surface.

For the foregoing reasons, we are satisfied that appellants have *disclosed* a process of making a carton which is new and unobvious with respect to the art of record as well as a new and unobvious carton blank. However, the appealed claims fall into different categories as to type and breadth and must be considered in separate groups to determine whether they distinguish patentably over the art.

Claims 7 and 9 are the only claims to a process for making a carton. They define features which result in appellants' disclosed sealing operation and thus distinguish over the prior art. Moreover, we do not agree with the board that they are unpatentable as drawn to an obvious method of making the resulting article. The decisions in Ex parte Trevette, 1901 C.D. 170 (Comr. Patents) and In re Larsen, 292 F.2d 531, 49 CCPA 711, relied on by the board, involved situations where the patentable concept was limited to the product produced by a process with the process being plainly obvious from that concept. In the present case, however, it is clear that appellants' conception lies basically in a process for sealing together waxed surfaces in forming a carton. The rejection of claims 7 and 9 is therefore *reversed.*

Claims 1, 2 and 10 are directed to the carton blank. We have no doubt that Mark would at least suggest to a person of ordinary skill in the art that the adhesive and wax coatings be provided on the Mark blank before it is folded. However, claim 10 clearly defines the blank in such terms that it is inherently usable to form a carton according to appellants' disclosure by heat-sealing together adjacent wax coated surfaces only one of which is provided with an underlying coating of adhesive. Although the language of claims 1 and 2 is not nearly

so clear on that point, the board does not appear to have regarded the difference between them and claim 10 to be significant. Upon analysis, we think the overall significance of claims 1 and 2 is that the adhesive coating must be so located on the blank as to result in only one of each pair of surfaces to be heat-sealed together having such coating under its wax layer. Accordingly, the rejection of claims 1, 2 and 10 is also reversed.

Claims 3 and 4, directed to a process for making a blank, require that a thermoplastic adhesive coating be applied to one side of the cardboard before both sides are coated with wax. Noting the statement of Mark, quoted above, that adhesive may be applied to the stock while still in the form of a web, we think it would be apparent to one skilled in the art that part or all of the coating might be done while the cardboard is in blank form. Claims 1, 3 and 8 of Mark also support that conclusion. Further, the fact that claims 3 and 4 refer only to applying the adhesive coating to one side of the blank does not preclude additionally applying it to other portions or insure that only one of each pair of adjacent surfaces to be sealed together has an adhesive coating. While claim 4 distinguishes from Mark as to the shape of the blank we think, as did the board, that it would be obvious to treat the old blank shape of the British patent, as recited in that claim, to prepare it for use in forming a waxed and sealed carton. The rejection of claims 3 and 4 is therefore affirmed.

Claims 5, 6 and 8 define the carton. They require the sealed areas to be such as would result from following appellants' process of having an undercoating of thermoplastic adhesive on only one of the surfaces sealed together and to the wax material being absorbed in blank material. The rejection of those claims is on the ground that appellants' particular seal resulting from the application of adhesive to only one of each pair of sealed surfaces is obvious from the references. Since we do not agree with that

position, the rejection of claims 5, 6 and 8 is reversed.

The decision of the board is affirmed as to claims 3 and 4 but reversed as to claims 1, 2 and 5 through 10.

Modified.