55 CCPA

**Application of Jerome J. KANTER.**

**Patent Appeal No. 7978.**

United States Court of Customs
and Patent Appeals.
July 3, 1968.

Henry L. Brinks, Robert L. Harmon, Chicago, Ill., for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.[*]

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals[1] affirming the examiner's rejection of claims 1, 4, 14, and 15, of appellant's application serial No. 197,702, filed May 25, 1962, entitled "Siliconized Ferrous Products and Processes for Same." Claims 5 and 7–11 have been allowed.

The invention of the appealed claims is the process of forming an adherent, silicon-containing coating ("case") on ferrous metal articles.

It has long been known that iron and steel articles with surface coatings (cases) of high silicon-iron alloys have certain desirable properties, including resistance to abrasion and corrosion. However, the tendency of the silicon-containing case to separate from the iron or steel core has limited the commercial use of articles so coated. Appellant has discovered that this spalling does not occur when the core article—the article on or in which the coating is formed—has "a stable body centered cubic crystal structure," e. g., an "alpha-delta" alloy. The appealed claims read:

1. The process of providing a metal article with an adherent silicon-containing case which comprises, maintaining a ferrous base metal alpha-delta alloy article at elevated temperatures while contacting with a siliconizing reagent for impregnating the surfaces of said alpha-delta alloy with silicon to form a case containing silicon upon an underlying core, said alpha-delta alloy having a stable body centered cubic crystal structure in sufficient amounts in its solid solution phase to suppress allotropic transformations in the temperature range up to about 2,000°F. for reducing stress-rupture between said case and said underlying core.

4. The process of Claim 1 in which said alpha-delta alloy is a steel alloy.

14. The process of claim 1 in which said alpha-delta alloy contains at least about two percent by weight silicon.

15. The process of claim 1 in which said alpha-delta alloy contains at least about one percent by weight aluminum.

The following reference is relied on:

Henderson et al. 2,501,051 March 21, 1950

Henderson discloses the siliconizing process used by appellant. In fact, appellant's specification refers to the Henderson patent for an example of the method he adopts.[2] Henderson, however, forms a silicon-containing case for a variety of core articles, cast irons, "alloy irons," "alloy steels" including those containing chromium, and, even nonferrous metals, "particularly copper." Alpha-delta alloys are not disclosed.

The board held appellant's claims unpatentable under 35 U.S.C. § 103, it being obvious, in the board's view, "to carry

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1.] Consisting of Magil, Rosa and Lidoff, Examiners-in-Chief, opinion by Magil.

[2.] In fact the specification says (our emphasis):

The *siliconizing process* employed may be one, or more, of the *processes* set forth in the Ihrig, Henderson, or Eckman patents set forth hereinabove, although the Eckman process is preferred.

out the conventional siliconizing operation on a particular alloy * * *." The board relied, inter alia, on seven of our recent decisions including In re Larsen, 292 F.2d 531, 49 CCPA 711, (1961); In re Albertson, 332 F.2d 379, 51 CCPA 1377, (1964); In re Neugebauer, 330 F.2d 353, 51 CCPA 1138, (1964).

We think the last of these is controlling. The appellants in that case argued that the *application* of a novel photoconductive coating to a conventional electrically conductive substratum *in the conventional manner* was itself a patentable *process*. They urged:

> * * * while it may be obvious to prepare the article by *coating* once the article is known, it certainly can not be obvious to prepare the article by such a process when the article is unknown and, absent appellants' disclosure, there is nothing to teach the claimed article.

We rejected that argument and held that the unobviousness of the final product was not determinative of the unobviousness of its method of manufacture.

■ In the case at bar, it is the substratum (with its consequent more permanent adhesion) rather than the coating which is new. Obviously, this distinction does not warrant a different result with respect to process patentability. We therefore affirm.

■ Appellant would distinguish In re Larsen,[3] supra, and, we suppose, by analogy, In re Neugebauer, supra, as "based upon the proposition that once certain compounds had been conceived, the process by which they were made was obvious." Appellant argues:

> By contrast, in the process of the present invention, the unique feature of preventing rupture between the iron layers is achieved *during* the process for producing the articles, as set forth above. The novel process is essential to the present invention.

We cannot agree. The unique features of any composition or article of manufacture, not found in the starting materials yet inhering in the composition or article, are necessarily "achieved" during the process of manufacture. The law is settled that the process of manufacture is not thereby rendered patentable. The process itself, considering the prior art, must satisfy the statutory conditions for patentability.

■ Appellant also argues that the "inventive concept lies basically in the process." We cannot very well argue with appellant's intuition as to where the "concept" lurks. We can only point out that the steps of the claimed process are old except for the alloy worked on and the product new. Appellant has achieved this new product by performing an old process on a starting material, or base metal alloy, not previously used in the process. The end-product is satisfactory, whereas prior end-products were not, due to spalling, because the old process has produced a novel article. That novelty is due to the characteristics of the starting material, not the process to which it was subjected. The selection of the starting material was, presumably, not obvious but such selection is not a category of patentable invention. 35 U.S.C. § 100. Selection resulted in a new, useful, and unobvious product on which claims have been allowed but it did not, in our view, result in either a new or unobvious process.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge (dissenting).

I respectfully record my dissent from the conclusion of the majority.

Initially, it appears from this record that the examiner, in his final rejection, stated that the claims which are now here on appeal were rejected "as the obvious method of making the article defined by claims 5 and 7–11." Those claims, it will be observed, are directed

---

3. In which a majority of this court held that the patentability of a chemical compound did not determine the patentability of its method of preparation.

to the article and are now all allowed. In a subsequent letter, the examiner referred to the Manual of Patent Examining Procedure, 706.03(q),[1] and a Commissioner's Notice, entitled "Guidelines of Patentability," 792 O.G. 293 GPI(e),[2] urging that the "alleged novel starting material is obvious from an inspection of the claimed article." Appellant's brief to the board challenged the statutory foundation for such a rejection in the patent statutes. Only in a Supplemental Examiner's Answer, in response to appellant's Reply Brief, was the Henderson patent relied upon as *prior art* in discussing the appealed claims. The board stated the rejection as "apparently" arising under 35 U.S.C. § 103, relying upon the Henderson patent as exemplifying "the obvious practice of the well known siliconizing procedure."

Thus, to the extent that the reasoning of the Patent Office is postulated upon the premise that once appellant had conceived his article, the method of making it would be obvious, that rejection is in error. 35 U.S.C. § 103 requires us to consider the differences between subject matter sought to be patented and the prior art as of the time the invention was made. Those statutory strictures must be carefully and accurately applied.

Second, on this record, I am unable to determine from the present record, with the certainty of the majority, that the invention resides in the article. Rather, it seems to me to be doubtful whether the invention resides in the article alone or in the process. In that instance, and where the invention may be claimed with equal facility in terms either of the method or structure, both types of claims should be allowed to issue on the basis that they are but alternative, statutorily-recognized expressions for defining the invention. In re Conover, 304 F.2d 680, 49 CCPA 1205 (1962). See In re Bowman, 347 F.2d 905, 52 CCPA 1521 (1965).

Finally, even if I were of the majority view that the invention resides in the article, I would dissent for the reasons more fully stated in my dissenting opinions in In re Larsen, 292 F.2d 531, 536, 49 CCPA 711, 718 (1961), and In re Albertson, 332 F.2d 379, 382, 51 CCPA 1377, 1381 (1964). While I agree that the statement of the case of In re Neugebauer, 330 F.2d 353, 51 CCPA 1138 (1964), proffered by the majority is accurate, I do not think that it is controlling on the record here.

It seems to me that In re Naylor, 369 F.2d 765, 54 CCPA 902, (1966), is more appropriate to the situation before us. There, we stated, id. at ——, 369 F.2d at 767–768:

> However, appellant is not claiming simply a process for preparing polybutadiene. Rather it is a process for preparing a particular polybutadiene having a particular microstructure

1. Manual of Patent Examining Procedure (MPEP), 706.03(q).

   An Applicant may invent a new and useful article of manufacture. Once the article is conceived, it often happens that anyone skilled in the art would at once be aware of a method of making it. In such a case, if applicant asserts both article and method claims, the articles claims are allowed but the method claims may be rejected as being drawn to an *obvious method of making the article.*

2. While I remain of the view that the 1952 Patent Act sets forth the controlling statement of "guidelines for patentability," that section of the Commissioner's Notice, Guidelines of Patentability, 792 O.G. 293 GPI(e), provides:

   It is well settled that a process which amounts of nothing more than an obvious manner of producing an article or product is not patentable.

   While a rejection on this ground does not require the citation of art or the allowance of any claim, it must be apparent to a person ordinarily skilled in the art, without reference to any method disclosure contained in the application, how the article was made. In other words, the rejection is proper if such a person would be able, upon the basis of his own knowledge, to produce the article merely by having it shown to him or by being told what ingredients it contained. Note In re Larsen, [292 F.2d 531], 49 CCPA 711.

and particular properties. Concededly, the reference combination does not teach that the Crawford process, as modified by the disclosure of Badische-Anilin, would produce the product sought by appellant and recited in his claims. We cannot ignore the particular product unexpectedly produced by the claimed process, as the Patent Office apparently has done, in determining whether the claimed subject matter *as a whole* is obvious. * * *

Here, a particular product is unexpectedly produced in that the prior silicon-containing cases tended to spall, whereas appellant's products overcome this difficulty.

For these reasons, I would reverse.