**In re Edwin P. PLEUDDEMANN.**

**No. 89–1510.**

United States Court of Appeals,
Federal Circuit.

Aug. 3, 1990.

Timothy W. Hagan (argued), Killworth, Gottman, Hagan & Schaeff, Dayton, Ohio, for appellant. With him on the brief, was Richard A. Killworth. Also on the brief, were Alexander Weitz and Robert L. McKellar, Dow Corning Corp., Midland, Mich., of counsel.

Richard E. Schafer (argued), Associate Sol., Office of Sol., Arlington, Va., for appellee. With him on the brief, was Fred E. McKelvey, Sol.

Before RICH, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MILLS, District Judge.*

---

\* Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

824

RICH, Circuit Judge.

This appeal is from the March 3, 1989, decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board) affirming the examiner's rejection of claims 8–16, 18–21, 26, and 27 of Pleuddemann's application serial No. 917,950, a division of serial No. 803,043, filed November 29, 1985, for "Silane Coupling Agents." The real party in interest is Dow Corning Corporation, Midland, Michigan. We reverse.

The rejection of the above claims is predicated solely on 35 U.S.C. § 103 on the ground of obviousness in view of the disclosure of a single reference, Pleuddemann et al. patent No. 3,258,477 ('477 patent), issued June 28, 1966, to Dow Corning Corporation, together with admissions in appellant's specification.

The application at bar incorporates by reference the disclosure of the '477 patent which also discloses organosilane coupling agents. Appellant says that the different coupling agents of the '477 patent have been "an industry standard for fiberglass-filled unsaturated polyesters for many years." It is explained that the silane compounds couple or bond the polyester resins to the fiberglass filling material, improving the mechanical properties of the resulting products. The specification of the application at bar further says that "[t]hese low molecular weight compounds are believed to form chemical links between filler particles and polymer molecules, and as such, they must incorporate functional groups capable of reacting with filler and resin alike." Disclosed are many suitable resins, all well known in the art, and a large number of suitable fillers of the general class of mineral fillers, likewise well known.

*The Claimed Invention*

Pleuddemann's present invention is broadly stated to be as follows:

It has now been found that a silane coupling agent, comprising the reaction product of an isocyanatoalkyl ester with an aminoorganosilane, can impart superior moisture resistance to mineral-filled unsaturated polyesters, as well as other unsaturated resin composites.

There then follows a structural formula purporting to define the class of organosilane reaction products which, with all of its substituent (R, R', R" etc.) definitions, occupies half a page, which it is unnecessary to repeat here in order to deal with the legal problems before us.

Next follows the statement, in two separate paragraphs, that the invention also relates to (1) a *process for bonding* a polymerizable material to a mineral filler and (2) a *method for priming* a surface to improve its bonding to certain organic resins. The claims on appeal are all directed to these *processes or methods*. All but two are dependent claims. Independent claim 26 is directed to the process of bonding and independent claim 27 is directed to the method for priming and both recite the elaborate structural formula of the class of organosilanes which do the bonding or priming, described in the specification.

The specification also states:

Methods of incorporating silane coupling agents to improve performance of filled resins are well known in the art.

It then explains how several of such methods are carried out.

The two representative independent claims on appeal are set forth below, omitting the formula contained in them which defines the class of coupling agents used (emphasis ours):

26. A *process for bonding* a polymerizable material to a mineral filler *comprising:* (a) *mixing* an organosilane with a polymerizable material having aliphatic unsaturation and a filler having hydroxyl functionality thereon, to obtain a uniform dispersion of the components; *and* (b) *polymerizing* the material to form a solid composite, wherein said organosilane is represented by the formula [FORMULA SET FORTH—COVERED COMPOUNDS ASSUMED TO BE NEW].

27. A *method for priming* a surface having hydroxyl functionality thereon to improve its bonding to organic resins containing aliphatic unsaturation in the

uncured state, *comprising wetting* the surface with a solution of an organosilane *and then drying* said surface, wherein said organosilane is represented by the formula [FORMULA SET FORTH—COVERED COMPOUNDS SAME AS CLAIM 26].

It will be noted that in claim 26 the filler has "hydroxyl functionality thereon" and that in claim 27 the surface to be primed also has "hydroxyl functionality thereon," in which respect the surface to be primed corresponds to the filler of claim 26, both the filler and the primed surface ultimately becoming bonded to the polymer through the organosilane.

### The Rejection

In his Answer on appeal to the board, the examiner stated that the Pleuddemann et al. '477 patent

> teaches the same process of bonding a polymerizable material to a filler containing hydroxy functionality using an analogous silane containing both unsaturation and hydrolyzable groups. The appellant further admits that silane coupling agents are well known in the art to improve mechanical properties of filled resins.

The examiner then stated that it was his position

> that it would have been obvious to one skilled in the art to use one silane compound in place of another in the process ... and in the method ... since the silane compound coupling agent acts as a coupling agent in the process and method.

In support of his rejection, the examiner cited *In re Durden,* 763 F.2d 1406, 226 USPQ 359 (Fed.Cir.1985).

In affirming, the board likewise relied on *Durden* and in an extensive opinion responding to appellant's legal arguments added two more cases, decided by our predecessor court, which it said it was unable to distinguish from the present case, namely, *In re Kanter,* 55 CCPA 1395, 399 F.2d 249, 158 USPQ 331 (1968), and *In re Neugebauer,* 51 CCPA 1138, 330 F.2d 353, 141 USPQ 205 (1964).

### Appellant's Contentions

First, we need to know a little prosecution background. The patent application (803,043) contained three groups of claims: (1) to the new group of aminoorganosilanes; (2) the process and method claims at bar; and (3) to the new articles of manufacture produced by using the new coupling agents. Restriction was required by the examiner and group (1) was elected. The claims were allowed and on March 17, 1987, Patent No. 4,650,889 was issued thereon. The claims in group (3), which were all dependent claims, were stated by the examiner to be allowable if rewritten in independent form and are not involved in this appeal. They are still pending in the application at bar in their conditionally allowed status. The patenting of the compounds claimed in group (1) provides us with the premise that they are new and unobvious compounds, which we take as a given in further discussion.

In essence, appellant contends that in addition to the claims on the new class of coupling *agents* which the PTO has granted, and the allowed claims on the *articles* made by using said agents in the usual way, he is also entitled to the appealed claims on the *process or method of using* those agents—in the usual way—for bonding or priming. It is contended that such method of use claims should be allowed because the *articles* made by using the new bonding agents have superior moisture resistant properties.

The shibboleth which appellant hopes will get the claims at bar into the golden realm of patentability, notwithstanding precedents cited by the PTO, is that they are "method of use" rather than "method of making" claims. It is further emphasized that the claims call for the use of a novel and nonobvious class of organosilane compounds and that is not disputed.

### OPINION

██ When a new and useful compound or group of compounds is invented or discovered having a *particular use* it is often the case that what is really a single invention may be viewed legally as having three

or more different aspects permitting it to be claimed in different ways, for example: (1) the compounds themselves; (2) the method or process of making the compounds; and (3) the method or process *of using* the compounds for their intended purpose. *In re Kuehl,* 475 F.2d 658, 177 USPQ 250 (CCPA 1973), was such a case. Our predecessor court so analyzed it. The case dealt with a new zeolite catalyst useful in the hydrocarbon cracking process in which other zeolite catalysts had been used before. The then Patent Office had allowed claims to the new zeolite, ZK–22, and to the method of making it, but balked at allowing claims to the method of using ZK–22 as a catalyst in hydrocarbon cracking. The appellant argued that allowance of claims to ZK–22 *necessarily* entitled him to claims on the method of use because the catalyst was a new and useful compound. The court said the proposition was "too broadly stated," citing *In re Albertson,* 51 CCPA 1377, 332 F.2d 379, 141 USPQ 730 (1964), where claims to the process *of preparing* certain compounds were rejected as obvious notwithstanding the compounds themselves were the subject of allowed claims. In *Albertson,* in affirming the rejection, the court said:

> We are of the opinion that each statutory class of claims should be considered independently on its own merits. *In re Wilke et al.,* 50 CCPA 964, 314 F.2d 558, 136 USPQ 435 [1963]; *In re Adams et al.,* 50 CCPA 1185, 316 F.2d 476, 137 USPQ 333 [1963]. The fact that the starting materials and the final product are the subject matter of allowed claims does not *necessarily* indicate that the *process* employed [to *make* the compounds] is patentable. [Emphasis ours.]

In *Kuehl,* however, we stated, as we often had before:

> The unobviousness of the herein claimed method of cracking hydrocarbons *using* ZK–22 must be judged by applying to the facts of this case the statutory standard for unobviousness of § 103. [Our emphasis.]

The court then proceeded to do just that. The Patent Office had rejected the method of use claims on prior art zeolites disclosed

in a patent to Frilette about which rejection the court said:

> ZK–22 is not so similar to the zeolites of the "A" series identified by Frilette as to render the use of ZK–22 to crack hydrocarbons, albeit in the *manner* used by Frilette, obvious to one of ordinary skill in the art. ZK–22 is not a homologue, isomer, or chemical analogue of series "A" zeolites. Nor do Frilette's teachings of zeolites broadly define a class, the knowledge of which would render ZK–22 or its use as a catalyst obvious.

In discussing prior cases in *Kuehl,* the court observed that there is a distinction which may be of significance between claims to a method of *making* a novel compound, which can be obvious though the compound itself is not, and claims to a method of *using* the compound. See the extended discussion under the heading "The Prior Cases," at the end of which it was said:

> We have concluded, for reasons stated above, that the process-of-use claims are patentable and that it is not necessary to show unexpected utility in order to show unobviousness. We would add, moreover, that in our view it is in the public interest to permit appellant to claim the process [of use] as well as the product. The result is to encourage a more detailed disclosure of the specific methods of using the novel composition he had invented in order to have support for the process claims.
>
> We believe the constitutional purpose of the patent system is promoted by encouraging applicants to claim, and therefore to describe in the manner required by 35 U.S.C. 112, *all aspects of what they regard as their inventions, regardless of the number of statutory classes involved.* [Emphasis ours.]

475 F.2d at 666, 177 USPQ at 256.

Twelve years after *Kuehl,* we again reviewed the case law in *Durden,* on which the PTO here relies, involving claims to a process of *making* a novel compound and a process *using* a novel compound and reit-

erated that, whatever process is claimed, its obviousness is to be determined under § 103 *in light of the prior art,* each case to be decided on the basis of its own fact situation. We declined to lay down any general rule and explained why. The examiner and board appear to have regarded *Durden,* or something said therein or to be deduced therefrom, as "controlling" of the present case. However, the facts here are not the facts of *Durden.* The single appealed claim in *Durden* was for a method of *making* a compound. The board majority rejected it for obviousness in view of a prior art patent and we affirmed. The appealed claims here are for methods of bonding/priming by the use of novel agents invented by appellant for that particular use. We repeat that the controlling law is in § 103 of the statute, which must be applied to the facts of this case.

◼ "From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing." *In re Papesch,* 50 CCPA 1084, 315 F.2d 381, 391, 137 USPQ 43, 51 (1963). It is the properties of appellant's compounds as bonding/priming agents for certain polymers and fillers or support surfaces that give them their utility. As stated above, the compounds and their use are but different aspects of, or ways of looking at, the same invention and consequently that invention is capable of being claimed both as new compounds or as a new method or process of bonding/priming. On the other hand, a process or method of making the compounds is a quite different thing; they may have been made by a process which was new or old, obvious or nonobvious. In this respect, therefore, there is a real difference between a process of making and a process of using and the cases dealing with one involve different problems from the cases dealing with the other. *Durden* was a case involving only the patentability of a process of making a novel insecticide and the single claim on appeal was held to be directed to obvious subject matter in view of a prior art patent disclosing a very similar process using similar reactants notwithstanding the facts that there were unobvious starting materials used and

unobvious products obtained. We are not here concerned with a process of making bonding/priming agents but with the agents themselves in which the bonding/priming properties are inherent, for which reason we do not find *Durden* a controlling precedent as did the examiner and the board.

◼ The board, in addition to reliance on *Durden,* cited *In re Kanter* and *In re Neugebauer.* Neither case involved the situation now before us. *Kanter* involved the patentability of a process of siliconizing, a kind of case hardening, which was conventional, applied to a new base material. Product claims had been allowed but we affirmed the rejection of the process claims because the process was old applied to other materials. We distinguish the case on the ground that it did not involve a method of use of a newly invented material. *Neugebauer* was deemed controlling in *Kanter* because of its similar fact situation and the court stated, in *Kanter,* that its holding had been that "the unobviousness of the final product was not determinative of the unobviousness of its method of manufacture." *Neugebauer's* invention related to electrophotography wherein a substrate is coated with a photoconductive substance. There were many allowed claims on the use of the article but among the rejected claims were some to a single-step method of "coating" in a known manner, it being argued that they were patentable methods of making claims because the product produced was new. We affirmed the rejection because there was no novelty in the process. Again we see no similarity to the facts here.

We deem the present case to resemble *Kuehl* wherein we held the use of the new catalyst, ZK–22, claimed as a method of cracking hydrocarbons, to be unobvious, for which reason we reverse the rejection.

The board was aware of *Kuehl* and sought to distinguish it on the ground that the *result* of the claimed process or method should be *unpredictable* before nonobviousness can be found. This involves, it seems to us, the same flaw we found in

*Kuehl* in that it presumes appellant's new group of silane compounds to be prior art. In *Kuehl* the court said, 475 F.2d at 664–665, 177 USPQ at 255:

> The test under § 103 is whether *in view of the prior art* the invention as a whole would have been obvious at the time it was made, *and the prior art here does not include the zeolite, ZK–22.* The obviousness of the process of cracking hydrocarbons with ZK–22 as a catalyst must be determined *without reference to knowledge of ZK–22* and its properties. So judged, the process of the appealed claims would not have been obvious. [Emphasis ours.]

In the present case likewise, § 103 obviousness of claims 26 and 27 depends on the obviousness of using appellant's new compounds, which constitute the essential limitation of the claims, in light of the prior art. That being so, the board's hindsight comparison of the functioning of the new compounds with the functioning of the compounds of the prior art was legal error. It uses appellant's specification teaching as though it were prior art in order to make claims to methods of bonding/priming using his admittedly novel compounds appear to be obvious. We hold that appellant is entitled to his method of use claims 8–16, 18–21, 26, and 27, together with the already allowed article of manufacture claims.

REVERSED.